HAWKINS, APPELLANT, ET AL. *v.* IVY, APPELLEE.

(No. 76-883—Decided May 18, 1977.)

*Mr. Don C. Iler,* for appellant.

*Mr. Thomas E. Betz* and *Mr. Neil E. Roberts,* for appellee.

HERBERT, J. Civ. R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

By the same token, if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320, 199 N. E. 2d 562.

Construing the evidence adduced at trial most strongly in appellant's favor, the record shows that at approximately 8:30 p. m., on November 26, 1972, appellee was operating an automobile in a northerly direction on Northfield Road in Warrensville Heights. Northfield was a four-lane highway divided by an island, two lanes being for northbound traffic and two lanes for traffic traveling southerly. It was a dark night, the black asphalt pavement was wet, and the air was filled with a mixture of "pretty heavy

rain and snow." Traffic was moderate. Appellee's car was gray in color. There were some street lights in the vicinity, their exact location and number being in conflict.

Appellee was proceeding in the inside or "passing" lane, when his headlights dimmed and his car stalled. The vehicle stopped between 15 and 25 feet from a driveway into a shopping center. Being unable to restart his engine, appellee went to a nearby bowling alley, where he borrowed a car. He returned to the scene with some friends and attempted to "jump-start" his engine with the battery in the other automobile. During the entire time the stalled car was attended, even when appellee was accompanied by friends, no effort was made to move the disabled vehicle from the passing lane into the nearby driveway.

Unsuccessful in his efforts to start his automobile, appellee thereupon departed for a gasoline station. Although he "thought" he had a flashlight in the car, none was used to warn approaching motorists. The flasher warning lights with which the car was equipped were not activated. Neither the parking lights nor headlights were turned on. The record is silent as to whether the hood was left in a raised position. In short, appellee failed to take any precaution whatsoever, and knowingly left his automobile under circumstances in which "the probability that harm would result from such failure was great." *Kellerman, supra.* Approximately ten minutes later, appellant collided with the rear of the stalled car and was injured.

Appellee's conduct was more than simple negligence. With full knowledge of the surrounding circumstances, his reckless and inexcusable disregard of the rights of other motorists, as evidenced by a record construed in accordance with Civ. R. 50(A)(4), *supra,* would support a finding of wanton misconduct.[1] *Cf. Brooks* v. *Norfolk & Western Ry. Co.* (1976), 45 Ohio St. 2d 34, 340 N. E. 2d 392; see *Keller-*

---

[1]Under the posture of the cause below, appellee's conduct and the degree of his culpability were matters upon which reasonable minds might have reached different conclusions, thus compelling the overruling of the motion for a directed verdict at that stage of the proceedings.

*man* v. *J. S. Durig Co.*, *supra* (176 Ohio St. 320); *cf. Universal Concrete Pipe Co.* v. *Bassett* (1936), 130 Ohio St. 567, 200 N. E. 843; and *Roszman* v. *Sammett* (1971), 26 Ohio St. 2d 94, 269 N. E. 2d 420.

Since *Bassett,* this court has announced many decisions in which wanton misconduct has been discussed in conjunction with the phrase "disposition to perversity." *Vecchio* v. *Vecchio* (1936), 131 Ohio St. 59, 64, 1 N. E. 2d 624; *Jenkins* v. *Sharp* (1942), 140 Ohio St. 80, 83, 42 N. E. 2d 755; *Kennard* v. *Palmer* (1944), 143 Ohio St. 1, 8, 53 N. E. 2d 908; *Masters* v. *N. Y. Central Rd. Co.* (1947), 147 Ohio St. 293, 299, 70 N. E. 2d 898; *Cole* v. *N. Y. Central Rd. Co.* (1948), 150 Ohio St. 175, 187, 80 N. E. 2d 854; *Helleren* v. *Dixon* (1949), 152 Ohio St. 40, 46, 86 N. E. 2d 777; *Birmelin* v. *Gist* (1954), 162 Ohio St. 98, 110, 120 N. E. 2d 711; *Lombardo* v. *De Shance* (1958), 167 Ohio St. 431, 433, fn. at page 433, 149 N. E. 2d 914; *Redis* v. *Lynch* (1959), 169 Ohio St. 305, 308, 159 N. E. 2d 597; *Billings* v. *Carroll* (1960), 171 Ohio St. 167, 169, 168 N. E. 2d 310; *Kellerman* v. *J. S. Durig Co.*, *supra*; *Bush* v. *Kelley's, Inc.* (1969), 18 Ohio St. 2d 89, 92, 247 N. E. 2d 745; *Roszman* v. *Sammett, supra*; *Bailey* v. *Brown* (1973), 34 Ohio St. 2d 62, 66, 295 N. E. 2d 672; *Rannells* v. *Cleveland* (1975), 41 Ohio St. 2d 1, fn. 2, at page 5, 321 N. E. 2d 885; *Brooks* v. *Norfolk & Western Ry. Co.*, *supra*.

Were it necessary, we could conclude that appellee's conduct in the case at bar amounted to such a disposition. However, we consider further reliance upon that phrase to be unnecessary to a workable definition of wanton misconduct. Should a jury determine that appellee's behavior and the surrounding circumstances were as described, a finding of wanton misconduct would be appropriate, and the talismanic exercise of also announcing the presence of a disposition to perversity is not required.[2] Where the driver of an automobile fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his fail-

---

[2] "Disposition to perversity" became a prerequisite to wanton misconduct in a rather quaint fashion. In *Bassett,* Stephenson, J., announced that wantonness was synonymous with "cussedness," and that

ure occurs under circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct.

Both the trial court and the Court of Appeals found that reasonable minds could only conclude that appellant was contributorily negligent in the operation of her autobile. See R. C. 4511.21.[3] However, we do not reach that question because a plaintiff's contributory negligence does not bar his recovery in an action where it is determined that damages were suffered as the proximate result of a defendant's wanton misconduct.[4]

The judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings.

*Judgment reversed.*

O'NEILL, C. J., STERN, W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN, J., dissents.

STERN, J., retired, assigned to active duty under authority of Section 6 (C), Article IV, Constitution, sitting for CELEBREZZE, J.

---

the latter "is a disposition to perversity." Although the *Bassett* court apparently feared enfeeblement of the defense of contributory negligence, the requirement of a disposition to perversity soon became a juridical blunderbuss when employed in conjunction with R. C. 4515.02, the automobile guest statute. That statute has been held unconstitutional. *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195, 331 N. E. 2d 723.

[3] R. C. 4511.21 provides, in relevant part:

"No person shall operate a motor vehicle * * * at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

[4] The question of what, if any, effect a plaintiff's contributory negligence should have upon an award of damages in a case involving willful misconduct is not before us, nor is the issue of exemplary damages in such a case. Furthermore, nothing in the record suggests that appellee's misconduct was willful, as opposed to wanton.

PAUL W. BROWN, J., dissenting. In *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320, this court reversed the order of the Court of Appeals for Trumbull County affirming the trial court's directed verdict for the defendant. That verdict was grounded upon the trial court's finding at the close of the plaintiff's evidence in chief that plaintiff's conduct violated R. C. 4511.21 (assured-clear-distance-ahead statute) and hence amounted to contributory negligence as a matter of law, precluding recovery under the holding in *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St. 81. This finding was a proper one under a long line of cases which were factually identical. *Kellerman, supra,* differed from this line of cases only in that the plaintiff had included in his complaint an allegation of ''wanton misconduct'' as a characterization of defendant's conduct almost identical with that of the defendants in all the preceding cases.

The *Kellerman* case was an invitation to the court to consider the doctrine of comparative negligence. Judge Zimmerman for the majority chose not to do so, but chose rather to conclude that the conduct described as "wanton," if found to exist, showed a "disposition to perversity" and "a reckless and inexcusable disregard of the rights and protection of others," and required the submission of the case to the jury. In detailing the ingredients of "wanton misconduct," Judge Zimmerman stated in paragraph three of the syllabus that such conduct consisted of "a failure to exercise *any* care toward those to whom a duty of care was owing when the probability that harm would result from such failure was great and such probability was *actually known*, or in the circumstances ought to have been known, to the defendant." (Emphasis added.) In such a state of awareness, nonaction thus was described as a "disposition to perversity"—another degree of negligence.

In the instant case, unlike *Kellerman*, there was no factual basis whatsoever for imputing "actual knowledge" to the defendant, and the appellant's brief and argument, in recognition of this, asserted that the time had come for judicial recognition of the doctrine of comparative negligence and for the revocation of the defense of contribu-

tory negligence. *Kellerman* was renounced by appellant who described the concept of "wanton misconduct" as "at best, a half announced and hesitant acknowledgment of the doctrine of comparative negligence." Reference was made to Prosser on Torts 426, Section 65.

Since substantially all of the automobile cases cited in the majority opinion as following *Universal Concrete Pipe Co. v. Bassett* (1936), 130 Ohio St. 567, and as containing as a definition of wanton misconduct the words "disposition to perversity," were guest statute cases, the recent demise of that statute at this court's hands leads me to conclude that further struggles to define this other type of negligence are counterproductive. This is especially so since R. C. 4511.21 is the well-defined legislative public policy of the state of Ohio.

I would hold that the violation of R. C. 4511.21 by the plaintiff was contributory negligence as a matter of law and was a defense to the plaintiff's action.