**FRANKLIN PARK LINCOLN–MERCURY, INC., Appellee,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION
OF TOLEDO et al., Appellants.**

[Cite as *Franklin Park Lincoln–Mercury, Inc. v. First
Fed. S. & L. Assn.* (1991), 73 Ohio App.3d 452.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–350.

Decided May 3, 1991.

*John A. Naayers,* for appellee.

*Jennifer L. Morrison,* for appellant.

———————

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas in which the court, at the close of the evidence presented at a trial to a jury, directed a verdict in favor of plaintiff-appellee. Appellant sets forth the following assignment of error:

"That the trial court erred in sustaining plaintiff-appellee's motion for a directed verdict when reasonable minds could reach different conclusions on the issue of agency.

"I. Franklin Park did not offer any evidence at trial to prove that Yeager possessed actual authority to act as an agent of First Federal at the time he executed the retail order for a motor vehicle on June 24, 1988.

"II. Franklin Park did not offer any evidence at trial to support the lower court's finding that First Federal held Yeager out to the public as possessing sufficient authority to transact business on its behalf."

The undisputed facts that are relevant to a determination of the issues raised by this appeal are as follows. During the early summer of 1988, Steven T. Yeager was the sole proprietor of Masterlease, an independent leasing brokerage business. Fed–Lease, Inc. ("Fed–Lease") was a leasing brokerage that had a mutually exclusive agreement with appellant, First Federal Savings and Loan Association of Toledo ("First Federal"), whereby all vehicles leased through First Federal had to be administered by Fed–Lease. Fed–Lease is owned in part by William D. Meyers, who also owned All–States Leasing ("ASL") with whom Yeager had been employed prior to the time of the transactions which gave rise to this lawsuit.

In June 1988, Yeager decided that he needed a company car to operate out of, but since he could not afford to buy one and did not believe he could obtain financing for one, he devised a scheme to "float" the use of a vehicle until certain business deals came to fruition at which time he would make good on all transactions. Putting his scheme into operation, on June 24, 1988, Yeager executed a retail order for a new 1988 Lincoln Town Car with appellee, Franklin Park Lincoln–Mercury, Inc. He told Franklin Park that he was First Federal's agent, that he was purchasing the car on behalf of First Federal and instructed Franklin Park to transfer title to the car directly to First Federal. First Federal was unaware of this transaction and unaware of Yeager's representations to Franklin Park.

On June 27, 1988, Yeager applied to Fed–Lease to lease the Lincoln Town Car from First Federal. On June 28, 1988, Fed–Lease instructed Yeager to "cash the deal" with First Federal and gave First Federal its approval to cash the deal directly with Yeager. On that day, the deal was "cashed" between Yeager and First Federal, which was accomplished by a series of transactions in which First Federal essentially purchased the vehicle and leased it back to Yeager. During these transactions, Yeager signed a lease agreement and presented documentation that the vehicle had been delivered and that title was being transferred from Franklin Park directly to First Federal.

First Federal then obtained permission from Fed–Lease to issue a check payable to Yeager in the amount of $29,975, which represented the purchase price that Yeager negotiated for the car in the amount of $25,007.49, tax and title charges and a mark-up or "capitalization." (This First Federal did as in its typical lease brokerage transaction in which it pays the broker the amount he requests, which includes a mark-up, without asking the broker to reveal the amount he negotiated for the purchase of the vehicle, provided that the amount the broker requests falls within the guidelines of the manufacturer's suggested retail price. The difference between the tax and title charges plus the purchase price negotiated by the broker and the amount paid to the broker by First Federal constitutes the broker's commission. Appellant then essentially amortizes the mark-up in the lease payments.)

Shortly after the deal was "cashed" with First Federal, Yeager picked up the certificate of title from Franklin Park and delivered it to First Federal. Mary M. Cluckey, Franklin Park's title clerk, was asked if she had any conversations with Yeager with regard to the payment for the car and replied: "When I passed him the title, I asked him where the check was, and he said it was in the mail." The check, however, along with the Town Car, was taken by Yeager who had gone to Florida. Appellee never received the purchase price of the Town Car and First Federal never received a lease payment. Subsequently, First Federal repossessed the car from Yeager, sold it and recovered a judgment for the deficiency.

On October 14, 1988, Franklin Park filed a complaint in the Lucas County Court of Common Pleas against Yeager and First Federal in which it alleged that Yeager was acting as First Federal's agent when he purchased the Lincoln Town Car and sought damages from First Federal in the amount of $25,032.99, the purchase price of the car plus tax and title charges. On October 28, 1988, First Federal filed its answer denying the allegations in the complaint. On January 13, 1989, Franklin Park filed an amended complaint which included the allegation that First Federal ratified the actions of Yeager

by exercising ownership rights over the vehicle. On February 10, 1989, First Federal filed an amended answer denying the ratification.

On September 27, 1989, the case proceeded to trial by jury. At the close of the evidence, Franklin Park moved for a directed verdict which the trial court granted. On October 19, 1989, the trial court filed its judgment entry in which it granted a directed verdict for Franklin Park on the basis that reasonable minds could only conclude " * * * that an agency relationship existed between * * * " First Federal and Yeager, and awarded Franklin Park pre-judgment interest. It is from the portion of this judgment in which the trial court directed a verdict in favor of Franklin Park that First Federal brings this appeal.

In its sole assignment of error, First Federal contends that the trial court erred in directing a verdict in Franklin Park's favor since reasonable minds could reach different conclusions on the issue of whether Yeager was First Federal's agent. In support, First Federal argues that sufficient evidence presented at trial established its position that Yeager was not expressly or impliedly authorized by it to purchase the vehicle on its behalf and that it did not ratify Yeager's purchase of the car since it did not have full knowledge of the surrounding facts, particularly that Yeager had represented to Franklin–Park that he was First Federal's agent and that he was purchasing the car on behalf of First Federal.

Appellee responds that Yeager was First Federal's agent by virtue of his being a broker and that his purchase of the vehicle on behalf of First Federal was either authorized by First Federal, or was ratified by First Federal when First Federal accepted the benefits of ownership of the vehicle or when it remained silent and failed to repudiate the contract after knowing that title had passed to it directly from Franklin Park.

Civ.R. 50(A)(4) provides that:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

"Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in disposing of such motion." *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 36, 1 O.O.2d 181, 183, 139 N.E.2d 10, 14. " * * * [I]f there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Haw-*

*kins v. Ivy* (1977), 50 Ohio St.2d 114, 115, 4 O.O.3d 243, 244, 363 N.E.2d 367, 368.

The issue presented here is whether the trial court, when construing the evidence that was before it most strongly in First Federal's favor, properly found that reasonable minds could only conclude that Yeager was First Federal's agent and that First Federal ratified Yeager's purchase of the vehicle on its behalf.

In *French v. Toledo* (1909), 81 Ohio St. 160, 167, 90 N.E. 160, 161, the Supreme Court of Ohio defined the term "broker":

" 'A broker is an agent employed to effect bargains and contracts as a middleman between other persons for a compensation called brokerage. He takes no possession, as broker, of the subject-matter of the negotiations.' Webster's International Dictionary. 'Brokers are those who are engaged for others in the negotiations of contracts relating to property with the custody of which they have no concern.' Bouvier's Law Dictionary. [*City of Portland v. O'Neil* (1856), 1 Ore., 218]."

As between the parties to it, a brokerage contract only exists by reason of being express or implied. *Ostendorf–Morris Co. v. Slyman* (1982), 6 Ohio App.3d 46, 47, 6 OBR 156, 157, 452 N.E.2d 1343, 1345. An implied-in-fact brokerage contract is established when it is shown that the principal " * * * accepted his agency and his acts under circumstances showing that he knew the services were being rendered on his account * * *." *Suter v. Farmers' Fertilizer Co.* (1919), 100 Ohio St. 403, 126 N.E. 304, paragraph one of the syllabus. A " * * * valid contract implied in fact had been established where the services of the broker involved were ratified and a written contract of compensation had been prepared, even though the broker's services were originally volunteered." *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 7, 540 N.E.2d 257, 263.

The existence of a brokerage contract establishes the broker as a special agent, having authority only as expressly conferred upon him, or as impliedly necessary to execute his powers. 12 American Jurisprudence 2d (1964) 819, Brokers, Section 65. However, "[t]he unauthorized acts of a broker, like those of any other agent, may be ratified by the principal, in which case the latter's rights and liabilities are the same as though he had, in the first instance, empowered his broker to do the act in question." *Id.* at 822, Section 68.

A principal ratifies the unauthorized acts of his agent when he does not take all steps reasonably within his power to disaffirm promptly and effectively the unauthorized acts of his agent. *Ward v. Natl. Bank of Paulding* (1965), 5 Ohio Misc. 140, 34 O.O.2d 321, 212 N.E.2d 191, paragraph three of the syllabus.

" 'The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction.' " *In re Ralston* (C.A.6, 1968), 401 F.2d 293, 295, quoting Restatement of the Law, Agency 2d (1958) 256, Section 99.

■ Applying the law as stated to the facts set forth above, this court finds that reasonable minds could only conclude that First Federal entered into an implied-in-fact brokerage contract with Yeager and ratified the purchase of the Town Car. Although First Federal did not know, prior to cashing the deal with Yeager, that Yeager had devised a scheme to "float" the use of the vehicle, or that he represented to Franklin Park that he was First Federal's agent, it did know that it was dealing with Yeager in place of its usual broker, Fed–Lease; that title was passing directly to it from Franklin Park; that it was to pay Yeager instead of Fed–Lease; and that Yeager was a lease broker. First Federal, therefore, entered into an implied-in-fact brokerage contract by accepting the opportunity provided by Yeager for it to procure a buy/lease brokerage deal, and the unauthorized acts of Yeager in purchasing the vehicle for First Federal were ratified by First Federal when it accepted and retained the benefits of ownership of the Town Car by leasing it back to Yeager, knowing that title was being passed, and did pass, directly to it from Franklin Park. It happens that, in this case, the very same surrounding circumstances that establish the implied-in-fact brokerage contract between First Federal and Yeager simultaneously establish First Federal's ratification of Yeager's unauthorized acts. Appellant " * * * may not blow hot and cold and if he accepts the benefits of a contract he accepts them *cum onere*. He may not receive the benefits and avoid the burdens." *In re Ralston, supra,* 401 F.2d at 295; *Simpson v. Indus. Comm.* (1930), 36 Ohio App. 316, 173 N.E. 211, paragraph four of the syllabus.

Accordingly, appellant's sole assignment of error is found not well taken.

■ Also pending is appellee's motion for reasonable expenses pursuant to App.R. 23. Reasonable expenses will be granted when the appeal is without merit and there is no reasonable cause for appeal. *Nye v. Schwab* (1937), 58 Ohio App. 422, 433, 12 O.O. 249, 254, 16 N.E.2d 783, 787. "Penalties are only allowed when the right is clear and unquestioned," *Strider v. Whims* (1940), 33 Ohio Law Abs. 210, 212, and there is no semblance of a defense. *Mason v. Renshaw* (1945), 43 Ohio Law Abs. 513, 514, 63 N.E.2d 171, 172. Upon consideration of appellee's motion, this court finds that this appeal was not

459

frivolous and that appellee's motion for App.R. 23 expenses is not well taken and is denied.

Upon consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.