JOURNAL ENTRY AND OPINION
Plaintiffs-appellants, Jozsef Lacza and Marianna Lacza, (hereinafter "appellants"[1]) appeal from the entry of a directed verdict by the trial court at the close of the appellants' case at trial.
The appellants filed the instant action in the Cuyahoga County Court of Common Pleas on October 10, 1996. The appellant is a Hungarian immigrant who came to this country sometime in the late 1980's.[2] The complaint alleged various causes of action sounding in breach of contract and fraud which purportedly arose when the appellant attempted to purchase a policy of disability insurance from appellee Bernard Kirchner, who was acting as an agent for co-appellee Provident Life and Accident Insurance Company (hereinafter "Provident"), and who is a partner in co-appellee United Agencies, Inc. The appellant alleged that when he first met with Kirchner, sometime in August of 1992, in connection with purchasing a disability policy, he was told that all he had to do was give Kirchner a check for the first month's premium and the policy would become effective immediately, without any need to submit the application to the insurer so it could verify the information given on the application or request that the applicant submit to a physical examination. Although the appellant claims that he gave Kirchner a check during this initial meeting, the appellant was able to produce no financial records at trial to substantiate this claim. The checking account records which the appellees were able to retrieve from the appellant's bank, National City Bank, conclusively established that no such check was ever cashed by either Kirchner or Provident, despite the appellant's continued assertions to the contrary.
Although he claims that he believed he had a policy in effect from Provident in August of 1992, the appellant applied for disability insurance with either three or four other insurers in the months that followed. On each of these applications the appellant stated that he had no other disability policies presently in effect. The appellant's other applications for disability insurance were each denied when it became apparent to the insurers that the appellant was attempting to conceal the fact that he was simultaneously applying for four or five policies of disability insurance.
The appellant contends that he sustained a disabling injury on or about October 19, 1992, when he dropped a bag of onions on his knee while working as a chef in a local restaurant. There were no witnesses to the accident.
On or about November 9, 1992, approximately 21 days after the alleged accident, the appellant was caused to be examined by a physician assistant, Bryan Schmitt, in conjunction with his application for a disability insurance policy with Provident. The appellant claims that he was wearing a cast on his entire right leg and was using crutches at the time of his examination, but that Schmitt did not notice because the crutches were in a corner, and the office was disorganized because the occupants were in the process of moving. In response to medical history questions posed by Schmitt, the appellant responded that he had no present "deformity or lameness," that he was not currently "under observation or taking treatment," and had no "physical disorder" or injury in the past five years. The appellant also denied having been a patient in a hospital or having had x-rays taken in the past five years. Schmitt noted on the examiner's portion of the questionnaire that the appellant had no obvious physical impairments at the time of the examination. The appellant's explanation for the above glaring inconsistencies in his story is that because he did not physically fill out the questionnaire himself, but merely provided information which was recorded by Schmitt, he cannot be held responsible for the answers that were recorded. The appellant provided no plausible reason why Schmitt, who is not employed by either Kirchner, United Agencies, or Provident, would deliberately misstate the answers given to him by the appellant on the medical questionnaire.
Per the terms of his policy, the appellant's premiums were to be paid through an automatic deduction from his checking account. The monthly premium was $122.22. The first such of these deductions was made from the appellant's checking account on December 28, 1992 in the amount of $244.44, representing two monthly payments. The policy issued to the appellant indicated that the effective date was approximately November 17, 1992, almost one month after the appellant claims to have dropped a bag of onions on his knee while at work. The policy purportedly did not provide coverage for injuries sustained within ninety days of the policy's effective date.[3]
Sometime in March of 1993, after the above-referenced ninety-day period had expired, the appellant made a claim on his Provident disability insurance policy, stating that he was prevented from working by the injury he claims to have sustained when he dropped the bag of onions on his knee. On approximately June 15, 1993, Provident sent the appellant a letter in which it informed him that the policy was being canceled due to the numerous and material misstatements of fact made by the appellant both on his application and during the course of his physical examination. Included in the cancellation letter which was sent to the appellant, was a refund check for the full amount of all premiums which he had paid up until that point. The cancellation letter also stated that the claim may have been rejected for other reasons, even if the policy had been properly issued. The letter was signed by co-appellee Mike Koslovich in his capacity as Provident's "field claim representative."
At trial the appellant confirmed that the amount of income he listed on his insurance application was significantly higher than the amount he reported on his income tax returns. His testimony also established that he had a number of pre-existing conditions which he failed to disclose in connection with his policy application.
The trial court granted the appellees' motions to dismiss on November 26, 1996 on all causes of action based on the alleged failure of the appellees to honor the terms of the policy the appellant claims was issued to him prior to his sustaining of a purportedly disabling injury on October 19, 1992. Thus, when the case eventually proceeded to trial, on May 22, 1998, only the fraud claims remained. At the time of trial, the four remaining defendants were Kirchner, United Agencies, Provident and Koslovich. The appellant has never appealed the partial granting of the motions to dismiss. Thus, the instant appeal concerns only the question of whether the trial court properly granted the motions for directed verdict on the appellant's claims of fraud. To the extent that any assignments of error raised by the appellant address issues other than the allegations of fraud, they will not be addressed herein.
At the close of the plaintiff's case, the trial court granted motions for directed verdicts for all defendants because the appellant failed to establish the existence of all the elements necessary to establish a claim for fraud. Specifically, the trial court stated:
 There is no medical testimony which would indicate that the occurrence on October 19, 1992 did in fact disable the plaintiff * * *. There is no indication as to how long he was disabled for, there is no real measure of damages here * * *. [I]t would be sheer speculation on the part of any trier of fact to make a determination based upon the state of the evidence at this moment, so once again, I'm going to grant the motions of [all] defendants and I'm going to dismiss this case.
The trial court essentially concluded that even if the appellant had established the requisite elements for an action sounding in fraud (which it expressly found that he had not), the fact that the appellant introduced no evidence whatsoever that he was damaged would nonetheless preclude recovery.
The appellant's first, second and ninth assignments of error are interrelated and will be addressed concurrently:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DISMISSED THE CASE OF PLAINTIFF JOZSEF LACZA AT THE CLOSE OF THE PLAINTIFF'S EVIDENCE AFTER THE PLAINTIFF RESTED. THAT SAID DISMISSAL WAS AGAINST THE WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF JOZSEF LACZA IN ITS RULING AFTER HEARING ALL OF THE TESTIMONY OF FOUR WITNESSES, DEFENDANT BERNARD KIRCHNER, DEFENDANT MIKE KOSLOVICH, PHYSICIAN'S ASSISTANT BRIAN SCHMIDT (SIC) AND PLAINTIFF JOZSEF LACZA. THAT THE ELEMENTS OF FRAUD AGAINST THREE DEFENDANTS WERE PROVEN. THERE WAS NO FRAUD PROVEN AGAINST PLAINTIFF JOZSEF LACZA.
 ASSIGNMENT OF ERROR NO. 9
 THE TRIAL COURT ERRED TO THE PLAINTIFF'S DETRIMENT BY FAILING TO RULE THAT THE PLAINTIFF JOZSEF LACZA DID PROVE THE ELEMENTS OF A PRIMA FACIE (SIC) CASE THAT SHOULD HAVE BEEN DETERMINED BY THE JURY WHO WERE SITTING AS TRIERS OF THE (SIC) FACT AFTER THE THREE DAYS OF HEARING AND LISTENING TO FOUR WITNESSES.
Initially, this court notes that it was not incumbent upon the appellees to prove that the appellant engaged in fraud in order to be entitled to have a verdict directed in their favor at the close of the appellant's case. The appellant's contention that the appellees failed to do so in his second assignment of error is utterly meaningless.[4]
The elements which must be shown to prove a claim for fraud are:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance.
Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, citingCohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169. Failure to establish any of these elements is fatal to a plaintiff's case and precludes recovery. Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, paragraph two of the syllabus.
Civ.R. 50(A)(4) states the standard to be used by trial courts in ruling upon a motion for a directed verdict:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
A motion for directed verdict should be denied where "there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions." Cater v. City of Cleveland (1998),83 Ohio St.3d 24, 33, citing Hawkins v. Ivy (1977), 50 Ohio St.2d 114,115. In Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120, the Supreme Court stated that "[t]he `reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantialprobative value in support of [the claims of the party against whom the motion is directed]." (Emphasis added.)
In the instant case, the trial court predicated its ruling upon the fact that the appellant introduced no evidence as to any damages he may have incurred and that he never introduced into evidence a copy of the policy under which he made a claim for disability coverage. Thus, even in the unlikely event that the trier of fact would have found that a disability policy issued by Provident was in effect at the time that the appellant claims to have injured himself on October 19, 1992, there was no way that the trier of fact could have conceivably determined whether the injury constituted a covered "disability" under the policy or determined the existence or extent of the appellant's injuries. Without a copy of the subject policy, the jury would not have been able to determine whether the appellant's injury was within the scope of the policy's coverage. Therefore, because there was no evidence of substantial probative value to buttress appellant's claim that he was defrauded by the appellees, the trial court appropriately granted the appellees' motions for directed verdict.[5] These assignments of error are hereby overruled.
In his remaining assignments of error, the appellant states:
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE TOTALITY OF THE TESTIMONY OF DEFENDANT MIKE KOSLOVICH, CALLED FOR CROSS-EXAMINATION, THAT HE ALONE SOLELY DETERMINED THE NULLIFICATION AND CANCELLATION OF THE PAID-UP PROVIDENT LIFE INSURANCE COMPANY DISABILITY POLICY NO. 4084076 AFTER A CLAIM HAD BEEN FILED BY JOZSEF LACZA ON OR ABOUT MARCH 8, 1993. THAT SAID CANCELLATION AND NULLIFICATION WAS GIVEN BY LETTER ON JUNE 15, 1993 TO PLAINTIFF JOZSEF LACZA.
 ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF JOZSEF LACZA WHEN SAID TRIAL COURT FAILED TO CONSIDER THE ANSWERS OF ADMISSIONS OF DEFENDANT BERNARD KIRCHNER TO AVOID THE NECESSITY OF ADDITIONAL PROOF OF ISSUES ANSWERED UNDER OATH. THAT THESE ANSWERS WERE FAVORABLE TO THE PLAINTIFF JOZSEF LACZA.
 ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF JOZSEF LACZA WHEN THE TRIAL COURT HELD AND IGNORED THE ANSWERS TO THE ADMISSIONS OF FACT OF DEFENDANT PROVIDENT LIFE INSURANCE COMPANY AS NOT BINDING UPON SAID DEFENDANT PROVIDENT LIFE INSURANCE COMPANY AND ALSO IGNORED THE FACT THAT SAID DEFENDANT PROVIDENT LIFE INSURANCE COMPANY DID NOT HAVE A REPRESENTATIVE WHEN SAID REPRESENTATIVE WAS CALLED FOR CROSS-EXAMINATION. THAT THE ANSWERS OF DEFENDANT PROVIDENT LIFE INSURANCE COMPANY WERE FAVORABLE TO THE DEFENDANT (SIC) JOZSEF LACZA.
 ASSIGNMENT OF ERROR NO. 6
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF JOZSEF LACZA WHEN THE TRIAL COURT FAILED TO HOLD AND IGNORED THE FACT THAT BRIAN SCHMIDT, A PHYSICIAN'S ASSISTANT FOR THE DEFENDANTS, SUBPOENAED FOR CROSS-EXAMINATION BY THE PLAINTIFF'S COUNSEL, WAS TO HAVE GIVEN A MEDICAL EXAMINATION TO THE PLAINTIFF JOZSEF LACZA NOVEMBER 9, 1992. THAT IN REALITY THERE WAS NO MEDICAL EXAMINATION GIVEN BY BRIAN SCHMIDT, A PHYSICIAN'S ASSISTANT, FOR THE REASON THAT SAID PHYSICIAN'S ASSISTANT WAS NOT QUALIFIED TO GIVE MEDICAL EXAMINATIONS BUT MERELY TO FILL OUT A MEDICAL INFORMATION SHEET WHICH WAS INCOMPLETELY FILLED OUT. THAT THERE NEVER WAS A MEDICAL EXAMINATION GIVEN TO JOZSEF LACZA PURSUANT TO HIS APPLICATION ON AUGUST 26, 1992.
 ASSIGNMENT OF ERROR NO. 7
 THE TRIAL COURT ERRED TO THE DETRIMENT OF THE PLAINTIFF JOZSEF LACZA BY REFUSING TO ALLOW THE PLAINTIFF'S PHYSICIAN DR. KEVIN HOFFMAN TO REBUTE (SIC) THE MEDICAL OPINIONS OF DR. KAUFMAN, DR. FRIEDMAN AND DR. GORDON ZELLARS OF THE WORKERS' COMPENSATION BUREAU (SIC) WHOSE WRITTEN OPINIONS WERE RELIED UPON BY DEFENDANT MIKE KOSLOVICH AS TESTIFIED TO BY MIKE KOSLOVICH ON CROSS-EXAMINATION AND USED AS A BASIS FOR NULLIFYING AND TERMINATING THE PAID-UP (SIC) DEFENDANT PROVIDENT LIFE INSURANCE COMPANY POLICY NO. 4084076 ON JUNE 15, 1993.
 ASSIGNMENT OF ERROR NO. 8
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF JOZSEF LACZA IN FAILING TO RECOGNIZE THE TESTIMONY OF THE FOUR WITNESSES, DEFENDANT BERNARD KIRCHNER, DEFENDANT MIKE KOSLOVICH, PHYSICIAN'S ASSISTANT BRIAN SCHMIDT AND PLAINTIFF JOZSEF LACZA, BEFORE THE JURY AS TO THE SUFFICIENCY OF EVIDENCE. THAT THE TERMS OF WRITTEN DISABILITY POLICY NO. 4084076 AS ISSUED BY DEFENDANT PROVIDENT LIFE INSURANCE COMPANY SOLD AUGUST 26, 1992 AND PHYSICALLY ISSUED BY PROVIDENT LIFE INSURANCE COMPANY THROUGH DEFENDANT BERNARD KIRCHNER TO PLAINTIFF JOZSEF LACZA NOVEMBER 18, 1992 REFLECT THE BENEFIT TERMS AT $2,000.00 A MONTH IN THE EVENT OF THE CLAIMANT JOZSEF LACZA BECOMING DISABLED BETWEEN AGES (SIC) 34 TO 65. THAT THESE TERMS WERE ALL AGREED TO BY THE SAID LITIGANTS HEREIN AT THE TIME OF ISSUANCE AND AT TRIAL.
Pursuant to this court's disposition of the appellant's first, second and ninth assignments of error, the remaining assignments of error are hereby rendered moot pursuant to App. R. 12(A)(1)(c) and need not be addressed by this court.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________________ MICHAEL J. CORRIGAN JUDGE
ROCCO, P.J., and BLACKMON, J., CONCUR.
[1] Because it is evident that the primary appellant is Jozsef Lacza, and that any connection that Marianna Lacza might have to this case is, at most, tangential, all references hereinafter to the "appellant" refer exclusively to Jozsef Lacza.
[2] Although the national origin of the appellant would not be considered germane to this case by most detached observers, the appellant's attorney apparently considers it of great consequence. The appellant's attorney informed this court of his client's ethnic background in the first sentence of his appellate brief. At trial the appellant's attorney informed the jury of his client's "minority ethnic" status during voir dire, and repeatedly thereafter throughout the trial. The appellant's brief in opposition to the motions for summary judgment at trial also delves into this issue in great detail, as does the complaint itself.
[3] No copy of the subject policy was ever introduced into evidence by the appellant. Therefore, there is no way to confirm the terms of specific policy provisions.
[4] Ironically, there was circumstantial evidence introduced at trial that the appellant did indeed engage in fraud in connection with the events surrounding this case. The appellant contradicted himself on the witness stand repeatedly and contradicted earlier sworn deposition testimony on numerous occasions. There was evidence that the appellant deliberately lied on several different insurance policy applications and during the course of the physical examination required by Provident. There was also testimony that the appellant was employed during the vast majority of the time that he claimed to be disabled. Finally, there was evidence that the appellant was under order to repay the Bureau of Workers' Compensation an amount in excess of $36,000 because he was found by BWC investigators to be working during a period in which he was collecting workers' compensation benefits from the state fund.
[5] Although the trial court properly based its decision to grant the motions for directed verdict on the failure of the appellant to introduce into evidence a copy of the subject insurance policy, and the lack of any medical testimony substantiating the appellant's injury claims, it appears to this court from a review of the record that the appellant also failed to introduce substantial competent evidence as to any of the other elements of fraud. There was no evidence that any of the appellees ever made any false representation to the appellant which was material to the transaction at hand, other than the appellant's self-serving and vague assertion that Kirchner told him that coverage would begin immediately on the day that the appellant filled out the application. The appellant's testimony in this regard was evasive and contradictory and was impeached by the introduction into evidence of bank records which conclusively established, contrary to the appellant's contention, that no payment was made by the appellant to Provident until December 28, 1999, over four months from the time that the appellant filled out an application for a disability policy.
Additionally, the fact that the appellant filled out numerous other applications for disability insurance, after his initial meeting with Kirchner, in which he denied that he had any other insurance policies in effect, is evidence that there was no reliance by the appellant on any alleged statement by Kirchner that the Provident policy would take effect immediately.