JOURNAL ENTRY AND OPINION
Defendant Halle Homes, Inc. (Halle) appeals from the judgment of the trial court which directed a verdict in favor of plaintiffs Lee Hang-Fu and Lun Hang-Fu on Halle Homes's counterclaim for breach of contract and which denied Halle Homes's motion for a directed verdict. For the reasons set forth below, we affirm.
On July 27, 1995, Lee Hang-Fu (hereafter referred to as Dr. Hang-Fu), as seller, and Halle Homes as buyer, entered into two agreements for the purchase of various sublots in the Kenssington Subdivision. The first agreement had a duration of forty-five days and ultimately resulted in Halle Homes's purchase of ten of the Kenssington sublots. The second agreement concerned thirteen additional sublots and provided in relevant part as follows:
2. PURCHASE SCHEDULE
 Buyer and Seller shall close the purchase of each of the sublots described in Section 1 of this Agreement within three-hundred sixty-five (365) days from the date of this agreement. The word close shall be construed to mean the filing of the Warranty Deed for record and the distribution of funds to Seller by the escrow agent designated in Section 3 of this Agreement. Nothing shall prohibit any one (1) sublot from closing at anytime, individually, within three-hundred sixty-five (365) days from the date of this Agreement, Buyer shall notify Seller and Seller shall be obligated to close within thirty (30) days from the date of Buyer's notification.
3. PURCHASE PRICE
 The purchase price of each sublot shall be in the amount stated in Section 1 of this Agreement. A deposit for each sublot in the amount stated in Section 1 of this Agreement shall be paid when Buyer signs this Agreement.
 The balance of the purchase Agreement shall be deposited in escrow with Cuyahoga Valley Title, Inc., 55 Public Square, Suite 1321, Cleveland, Ohio 44113, in time to permit closing in accordance with Section 2 of this Agreement.
* * *
7. TITLE DEFECTS
 * * * Otherwise Buyer shall be deemed to accept title to the sublot as is without reduction of the purchase price.
9. ESCROW
 (c) Buyer and Seller shall deposit all funds and documents required in connection with the purchase and sale of each sublot in escrow in sufficient time to permit closing in accordance with Section 2 of this Agreement. Upon deposit of all funds and documents, the escrow agent shall cause the Warranty Deed and any other instruments necessary to be filed for record and shall disburse the funds owed Seller to Seller.
17. ENTIRE AGREEMENT.
 This Agreement contains the entire agreement between the parties and no statement or representation of the respective parties hereto, their agents or employees, made outside this Agreement and not contained herein, shall form a part hereof or be binding upon the parties hereto.
(Hereafter referred to as the 365 day agreement).
It is undisputed that Halle Homes purchased three sublots under this agreement. In September 1996, William Bishop, president of Halle Homes, asserted that Dr. Hang-Fu misinformed him of the boundaries of the federally designated flood hazard area affecting the sublots. Bishop demanded $110,000 for lost profit and diminished value of the parcels and indicated that he would purchase several of the remaining sublots but require[d] a resolution as to the losses [he had] incurred. In October 1996, William Bishop, president of Halle Homes averred, in an affidavit filed with the county auditor pursuant to R.C. 5301.252 that he had deposited with the seller funds for the purchase of various sublots. Plaintiffs were thereafter unable to complete sales of various sublots listed on the 365 day agreement and on March 10, 1997, plaintiffs filed suit against Halle Homes. In their amended complaint, plaintiffs sought a declaratory judgment that Halle Homes had no interest in any of the sublots following the expiration of the 365 day agreement, and also claimed that Halle Homes tortiously interfered with their contractual relationships, and slandered their title. Halle Homes asserted a counterclaim against plaintiffs in which it asserted that plaintiffs had breached the terms of the 365 day agreement, and that plaintiffs were liable for fraud in connection with information concerning the boundaries of the flood plain. Halle Homes also filed a third party complaint against Paul Cutter, a subsequent purchaser of one of the lots listed in the 365 day agreement. Cutter was subsequently granted summary judgment and he is not a party to this appeal.
The matter proceeded to trial on May 17, 1999. For their case, plaintiffs presented the testimony of William Bishop, president of Halle Homes, upon cross-examination. Bishop acknowledged that he drafted both agreements and that Halle Homes purchased all of the sublots listed in the forty-five day agreement. He further stated that he purchased several lots under the 365 day agreement. After the agreement was signed, he asked Dr. Hang-Fu about the flood plain near the property. He admitted that he was aware that there was a waterway near the property. Apart from the one dollar deposit for each lot, he did not deposit money in escrow for the lots. Bishop further admitted that in an affidavit relating to the title of the subject property prepared pursuant to R.C. 5301.252, in October 1996, he untruthfully averred that he had deposited with the seller funds toward the purchase price of the property. Finally, Bishop acknowledged that he did not receive any written documentation from plaintiffs extending the terms of the agreement.
Next, Dr. Hang-Fu testified that he and his brother Lun Hang-Fu purchased the property, known as the Kenssington Subdivision, in North Ridgeville, in 1992. Phase I of the property was approved for development in 1993 and Phase II was approved in 1994. Some time in July 1995, Bishop requested flood plain information concerning the parcels prepared by the Federal Emergency Management Agency (FEMA.) Dr. Hang-Fu provided him with drawings which reflected FEMA flood plain information, which unknown to Dr. Hang-Fu, had been subsequently revised.
Dr. Hang-Fu further testified that Bishop prepared both the 45 and 365 day contracts. Pursuant to the 45 day agreement, Halle Homes purchased ten sublots. In each instance, Halle Homes deposited funds with the escrow agent before title transferred. Halle Homes purchased four sublots pursuant to 365 day contract. In each instance, Halle Homes deposited the purchase price with the escrow agent, Dr. Hang-Fu received notice from the title company regarding the completion of necessary paperwork, then title transferred.
Dr. Hang-Fu further testified that by July of 1996, or one year after execution of the 365 day contract, Halle Homes had not contacted him regarding the purchase of any additional sublots. He subsequently assigned his rights, title and interest in the remaining Kenssington Subdivision to Leeland Development, Inc. Dr. Hang-Fu informed the title agency of this transfer and further indicated that transactions were to be completed no later than September 30, 1996. Halle Homes did not receive a copy of this document and did not provide any additional consideration for an extension of the 365 day agreement.
In September 1996, Bishop complained that the flood plain information which Dr. Hang-Fu had provided was no longer accurate and he requested $110,000 for diminished values and lost profits.
Dr. Hang-Fu next established that by 1997, he attempted to sell the remaining sublots. After Bishop filed his affidavit pursuant to R.C. 5301.252, however, Dr. Hang-Fu was unable to complete several sales of the remaining lots because he could not provide good title to the prospective purchasers. Dr. Hang-Fu testified that he incurred legal fees in excess of $8,000 in connection with these matters and that he has paid over $19,000 in real estate taxes for the parcels during the pendency of the dispute with Halle Homes. In addition, Dr. Hang-Fu estimated that this matter has caused him to lose approximately $15,000 which he could have otherwise earned from his medical practice.
Civil Engineer Jeffrey L. Oeltjen, who served as the North Ridgeville City Engineer from 1990-1994, next testified that in that capacity, he reviewed subdivision plans to determine, inter alia, whether the plans met the requirements of FEMA. He further established that Dr. Hang-Fu retained an engineer to assist him in obtaining city approval for the proposed subdivision in 1992, and that the plans were therefore submitted prior to the FEMA revisions. Oeltjen then gave Dr. Hang-Fu's engineer data concerning FEMA's proposed revisions. The plans were then resubmitted containing calculations which reflected this new data provided by the city and were eventually approved by the city. Finally, Oeltjen testified that the FEMA data was available at city hall and was also incorporated into the city's ordinances.
John G. Sayler testified that, before his retirement, he was president of the Henry G. Reitz Engineering Co. He stated that he was retained by Dr. Hang-Fu and developed preliminary plans in 1992. Oeltjen subsequently provided him with proposed FEMA revisions which Sayler then incorporated into the plan. The official FEMA revisions had not yet been promulgated at this time, however.
The defense subsequently moved for a directed verdict, asserting that the real party in interest in this matter is Leeland Development, Inc. and that this entity was not joined in the action. The trial court denied the motion and also determined as a matter of law, that the affidavit which William Bishop executed pursuant to R.C. 5301.252 was not a cloud on the title.
The defense then presented its evidence and called Dr. Hang-Fu, upon cross-examination. Dr. Hang-Fu admitted that in July 1995, Bishop requested the current flood zone map for the parcels. Dr. Hang-Fu then obtained the data used by his engineer. Dr. Hang-Fu stated that he did not learn that the flood zone was altered by the federal government until September 1996. He further acknowledged that Bishop had not, in retrospect, given the most current data, but he denied that Bishop was owed a rebate for the sublots purchased since the price set forth in the 365 day agreement reflected a $10,000 discount per lot which was premised upon his understanding that Halle Homes would purchase all of the lots described in that agreement.
Builder Shaun Brady testified that in 1994, he informed Dr. Hang-Fu that one of the city's building inspectors indicated that the federally designed flood plain encroached upon some of the sublots. Brady admitted, however, that he was not aware of any revisions of the flood plain at this time and that the federally designated areas can be determined by anyone interested in examining this information.
William Bishop next testified that he initially expressed concern for the boundaries of the flood plain in September 1995. He received information from Dr. Hang-Fu which allayed his fears. Later, in 1996, he learned that sublot 28 lies in a federally-designated flood zone. He subsequently moved the family who had purchased this lot to another sublot which he discounted by $2,500. He stated that his profit was diminished by approximately $6,000 in connection with lot 28 and by approximately $12,000 in connection with lot 29.
Bishop also stated that he decided to purchase five additional sublots which were not within the flood plain designation but he acknowledged that he now felt that the sublots he had already purchased were worth less than he had originally agreed to pay and he asserted that Dr. Hang-Fu owed him money for lost profits in connection with those sublots. He stated that, based upon a discussion with the escrow agent, he believed that there was a new deadline of September 30, 1996 for purchasing sublots. He admitted, however, that he filed the affidavit pursuant to R.C.5301.252 in October 1996 or well after this purported new deadline.
Carole Russell of Cuyahoga Valley Title testified that she served as the escrow agent pursuant to the terms of the 365 day contract. She testified that she acts as a neutral third party and is paid by both the buyer and the seller. In dealing with the parties' previous transfers, Bishop notified her of his intention to close on a particular sublot. She then contacted Dr. Hang-Fu in order to have him sign the escrow papers which she listed as deeds, the escrow acceptance, acknowledgment of funds.
She further testified that in May or June of 1996, or before the stated expiration of the 365 day agreement, Bishop notified her that he wished to close on several sublots. She then attempted to contact Dr. Hang-Fu but he did not return her calls. Russell also testified that when she received notice of his transfer of his interest to Leeland Development, Inc., with its handwritten notation to be completed no later than Sept. 30 96, she interpreted this as an extension of the 365 day agreement. She admitted, however, that Bishop did not deposit funds into escrow for these sublots.
The trial court directed a verdict for Dr. Hang-Fu on Halle Homes's counterclaim for breach of contract and the matter was submitted to the jury. In special interrogatories, the jury determined that Dr. Hang-Fu did not know of the 1993 FEMA revisions of the flood plain map when he provided the engineering report to Bishop, and that Bishop intentionally interfered with Dr. Hang-Fu's business interests in connection with his affidavit pursuant to R.C. 5301.252. The jury returned a verdict for plaintiffs in the amount of $50,000. The jury also found in favor of plaintiffs on the remaining claims of Halle Homes's counterclaim. Halle Homes now appeals and assigns four assignments of error for our review.
Halle Homes's first, second, and third assignments of error are interrelated and state:
 THE TRIAL COURT ERRED BY GRANTING PLAINTIFF'S MOTION FOR A DIRECTED VERDICT AS TO HALLE'S COUNTERCLAIM FOR BREACH OF CONTRACT BECAUSE HANG-FU REFUSED TO PERFORM THE CONTRACT WITHIN 365 DAYS OF EXPIRATION.
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED HANG-FU'S MOTION FOR A DIRECTED VERDICT AS TO HALLE'S COUNTERCLAIM FOR BREACH OF CONTRACT BECAUSE HALLE TENDERED PERFORMANCE OF THE CONTRACT WITHIN THE EXTENDED TIME FOR PERFORMANCE BUT HANG-FU REFUSED TO PERFORM.
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO PERMIT THE JURY TO CONSIDER HANG-FU'S BREACH OF THE CONTRACT AS A PART OF HALLE'S DEFENSE TO THE TORTIOUS INTERFERENCE WITH CONTRACT CLAIM.
Within these assignments of error, Halle Homes asserts that the trial court erred in directing a verdict for plaintiffs on Halle Homes's counterclaim for breach of contract. Essentially, Halle Homes insists that plaintiffs breached their duty to submit title documents to the escrow agent because this in turn precluded Halle Homes from tendering payment for the sublots. This contention is without merit.
With regard to procedure, we note that Civ.R. 50(A)(4) states:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285, the Supreme Court set forth the standard for deciding a motion for a directed verdict as follows:
 "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320 [27 O.O.2d 241, 199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]." With regard to the substantive law, we note that an escrow is a matter of agreement between the parties. Pippin v. Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196, 198.
Further, in Young v. Brookshire Village Properties (1995),101 Ohio App.3d 458, 461, the court determined that a potential purchaser could not prevail upon a claim for breach of contract where he failed to tender or attempt to tender the purchase price prior to the deadline for closing. The court stated:
 In his first assignment of error, Young contends that the trial court erred in finding that he is not entitled to recover against Brookshire for breach of contract. We disagree. It is a settled principle of contract law that, in the case of mutually dependant promises, neither party is obligated to perform or is in default until the promise of the other party is performed or the other party tenders performance. Raudabaugh v. Hart (1899), 61 Ohio St. 73, 87-88, 55 N.E. 214, 217.
 The record indicates that Brookshire's promise to convey the property was contingent and mutually dependent upon Young's promise to convey the purchase money prior to the June 30, 1993 deadline for closing. There is no evidence that Young tendered or attempted to tender the purchase money to Brookshire within this period. Consequently, we find that Young is barred from recovering against Brookshire for breach of contract as a matter of law.
 The first assignment of error is not well taken and is hereby overruled.
Similarly, in Ritchie v. Cordray (1983), 10 Ohio App.3d 213,216, the court stated as follows:
 Plaintiff's position is grounded upon his strict and literal reading of the "OUTSTANDING LEASE" provision of the contract, and, if pursued to its logical conclusion when read in conjunction with the "CLOSING" provision, means that defendants were required to convey title to him immediately upon his exercise of the option, and then wait thirty days for a "closing" and payment. While there can be circumstances where a contract will provide for conveyance of title prior to payment, plaintiff has failed to point out the existence of any such circumstances in this case. Apart from some vague references in the testimony regarding plaintiff's need for a legal description of the property (there was testimony that it was made available to him) and title evidence (the contract is silent regarding any obligation of defendants in this regard), in order to enable him to obtain financing, plaintiff offered no explanation as to why conveyance of title prior to payment was contemplated by the contract. Accordingly, if the deed delivery provision is to be construed with the balance of the contract in a manner which will avoid an absurd result, it must be assumed that delivery of the deed at the time the option was exercised was not essential to the performance of the contract. In the context of the "OUTSTANDING LEASE" provision, the words "upon the exercise" should be read as having the same meaning as the words "in the event of the exercise."
* * *
 It is well-settled that tender of performance by one party to a contract is excused where it is clear to that party that the other party is unable to perform. See Gebbie v. Efros (1917), 95 Ohio St. 215, 116 N.E. 31; Diem v. Koblitz (1892), 49 Ohio St. 41, 29 N.E. 1124.
 Although there was testimony from plaintiff's witnesses that he would have been able to obtain financing, there was no evidence that he actually had obtained it (in fact, plaintiff's source admitted he had not committed himself), or that he ever communicated to defendants his ability to obtain financing. And, as mentioned above, it was uncontroverted that plaintiff never tendered payment to defendants. Under these circumstances, defendants were under no obligation to convey title to a buyer who, even though pressed to close the sale, had given no indication that he could or would pay for the property.
In this instance, the 365 day agreement provided that payment of the balance due for each sublot had to be deposited in escrow in time to permit closing, defined as the filing of a warranty deed for record and the distribution of the proceeds, within the 365 day period of the agreement. Halle Homes did not deposit the purchase price with the escrow agent, and indeed, by September 1996 was dictating completely different terms and conditions of payment.
Further, the parties' past practice undisputedly indicated that Halle Homes submitted payment of the balance due for each sublot before plaintiffs were required to submit the relevant documents to the escrow agent. In light of the foregoing, these assignments of error are completely without merit and are therefore overruled.
Defendant's fourth assignment of error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED HALLE'S MOTION FOR A DIRECTED VERDICT SINCE LEELAND DEVELOPMENT CORP. — NOT HANG-FU — HELD TITLE TO THE KENSSINGTON SUBLOTS WHEN THE BISHOP AFFIDAVIT WAS FILED.
Within these assignments of error, defendant asserts that Leeland Development held title to the subject property and that the matter therefore should have been filed by this entity, not Lee Hang-Fu and Lun Hang-Fu. We reject this claim as untimely.
Civil Rule 17(A) provides as follows:
 "Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought. When a statute of this state so provides, an action for the use or benefit of another shall be brought in the name of the state. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Under this rule, the action should not be dismissed for such a defect in the status of a party until the party has had a reasonable time to correct the defect. It is ordinarily reversible error if the trial court refuses to allow a reasonable time to do so. Grange Mutual Companies v. Steele (Aug. 23, 1984), Jackson App. No. 485, unreported. As that court stated:
 "The letter and spirit of the Rule envisions that timely objection be raised and ruled upon so that the real party in interest can be joined or substituted so that the action with the proper parties can proceed to judgment; not to preclude recovery and cut off substantive rights of the real party in interest if not joined. Moreover, the Civil Rules are to be construed and applied `to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice.' See Caver 1(B)." Id.
Moreover, the requirement that suits be brought by the real party in interest is a procedural requirement, not a jurisdictional requirement. Macalli v. Transcend Builders, Inc. (Jan. 22, 1981), Cuyahoga App. No. 42047, unreported. Consequently, many courts have held that the defense that the plaintiff is not the real party in interest is an affirmative defense and, therefore, must be specifically pled or it is waived. Civ.R. 8(C) and 9(A). See Jacobs v. Joseph (Dec. 11, 1998), Lucas App. No. L-98-1045, unreported; Robbins v. Warren (May 6, 1996), Butler App. No. CA95-11-200, unreported; MacLellan v. Motorists Ins. Co. (Nov. 18, 1993), Cuyahoga App. No. 64090, unreported; Mikolay, supra; McConnell v. McConnell (Nov. 20, 1980), Cuyahoga App. No. 42075, unreported.
Also pursuant to Civ.R. 19:
 A person who is subject to service of process shall be joined as a party in the action if . . . he has an interest relating to the subject of the action as an assignor, assignee, subrogor or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided as provided in Civ.R. 12(G) and (H).[1]
In this instance, Halle Homes did not raise the issue of whether Dr. Hang-Fu was a proper party plaintiff until after plaintiffs had presented their case to the court. We find that this is simply too late and constitutes a waiver of this defense. This assignment of error is therefore without merit.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
CORRIGAN, J., AND PORTER, J., CONCUR.
ANN DYKE, ADMINISTRATIVE JUDGE
[1] That is, in a responsive pleading or in a motion before a pleading if a responsive pleading is required. Civ.R. 12.