**Scott and Michele STEWART, Plaintiffs,**

v.

**CARTESSA CORPORATION and David Kristof, Defendants.**

**Civ. A. No. C–1–88–558.**

United States District Court, S.D. Ohio, W.D.

Jan. 4, 1990.

David Michael Kothman, Santen & Hughes, Cincinnati, Ohio, for plaintiffs.

Douglas Charles Prince, Kolstein, Engle & Prince, Cincinnati, Ohio, for defendants.

## FINDINGS OF FACT, DECISION AND CONCLUSIONS OF LAW

JACK SHERMAN, Jr., United States Magistrate Judge.

This matter is before the Court upon consent of the parties for a final disposition (doc. 32). Trial to the Court occurred on Monday, July 24 through Monday, July 31, 1989. Counsel for both parties waived closing argument at the close of the trial and submitted post-trial briefs on August 18, 1989.

On June 21, 1988 plaintiffs Scott and Michele Stewart brought this action against Cartessa Corporation, Mrs. Stewart's former employer, and against an employee of that company, David Kristof, for sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and for assault, battery, intentional infliction of emotional distress and breach of contract related to the sexual harassment. On June 2, 1989, United States District Court Judge Herman J. Weber dismissed involuntarily and without prejudice plaintiffs' state law claims for lack of subject matter jurisdiction. The remaining action tried before this Court is the alleged violation of Title VII of the Civil Rights Act of 1964, *id.*, by Cartessa Corporation against Michele Stewart.

In accordance with Federal Rule of Civil Procedure 52(a), this Court does hereby state its findings of fact, decision and conclusions of law.

## FINDINGS OF FACT

1. Defendant Cartessa Corporation (Cartessa) is an Ohio corporation doing business in the State of Ohio within the district of this Court. It is engaged in the production and distribution of electronic components and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 45 U.S.C. §§ 2000e(b), (g), and (h).

2. Plaintiff Michele Stewart, a female, was employed by Cartessa as an assembler from June 15, 1987 until January 29, 1988.

3. All parties herein are citizens of the United States and of the State of Ohio and are residents of the geographical jurisdiction of this Court.

4. Plaintiffs Scott and Michele Stewart are, and at all times relevant to this case have been, husband and wife.

5. David Kristof was an employee of Cartessa throughout the period of employment of plaintiff Michele Stewart, and is the son of the owner and president of Cartessa, Joachim A. Kristof.

6. At no time during Michele Stewart's employment did Cartessa ever maintain any formal or informal employment policy prohibiting sexual harassment or creating a mechanism specifically for the purpose of addressing complaints or incidents of sexual harassment.

7. When Michele Stewart began work at Cartessa, she received training for several weeks by David Kristof. During this training period and at other times during the course of her employment, David Kristof and plaintiff Michele Stewart engaged in conversation of an instructional and of a social nature.

8. Throughout the period of plaintiff Michele Stewart's employment at Cartessa, she engaged in conversation of a general and personal nature with co-workers. These conversations on occasion included David Kristof.

9. The physical layout of the work environment at Cartessa was such that all assemblers sat at a long table with separate work stations. David Kristof sat at the table end on one side and plaintiff, Michele Stewart, sat at approximately the middle of the table on the opposite side of David Kristof.

10. Approximately two weeks after Michele Stewart commenced employment with Cartessa, David Kristof began staring at her; following her around to the kitchen, to the bathroom, to a back work room, and on several occasions to her car; grabbing her;

touching her shoulders, hands, arms, hips, and on one occasion her breast, all against her will.

11. On several occasions David Kristof hugged and squeezed Michele Stewart, and on several other occasions played music of a romantic nature directed toward her at the workplace when she was not free to leave, all against her will.

12. Michele Stewart communicated to David Kristof on a number of occasions not to approach her in the ways mentioned above and that his touching, approaches, and his extraordinary attention to her were clearly unwanted. Michele Stewart's requests to David Kristof that he desist began during July 1987.

13. Michele Stewart complained of David Kristof's conduct toward her to Rebecca Sunderhaus, who was the office manager for Cartessa and David Kristof's sister. This complaint took place no later than October 1987. Rebecca Sunderhaus took no action in response to Michele Stewart's complaints.

14. Michele Stewart complained on two occasions to Darryl Kristof, who was Cartessa's production manager and also David Kristof's brother. As production manager, Darryl Kristof supervised the work of approximately a dozen assemblers in the factory, including Michele Stewart and David Kristof. The complaints to Darryl Kristof occurred during the month of December 1987.

15. In response to Michele Stewart's first complaint to him, Darryl Kristoff made no investigation, and made no inquiry of his brother. Instead, Darryl Kristof responded to Michele Stewart's complaints by telling her that he could understand why David Kristof was so attracted to her, telling her, "If you weren't married, I would ask you out myself."

16. When David Kristof's conduct did not stop, Michele Stewart approached Darryl Kristof a second time. When she asked him if he had done anything about the situation, Darryl responded that he had spoken to his father, Joachim Kristof, the owner and president of the company, who had expressed amusement that his "38-year old son was finally falling in love and with a married woman."

17. At no time did David Kristof make any express comments of a sexual nature, make a request for sexual favors of Michele Stewart or request that they socialize outside of the workplace.

18. On one occasion David Kristof provided Michele Stewart with a note of apology for his conduct. On a second occasion he provided Michele Stewart with a note of apology for an insensitive statement which he had made to her.

19. During the course of her employment at Cartessa and as a result of her contact with David Kristof and the conduct he exhibited, Michele Stewart suffered from severe mental, physical and emotional trauma including loss of weight, loss of appetite, headaches, rashes, chest pains, a spastic colon, sleep disorders, depression, agoraphobia, sexual dysfunction, and vomiting.

20. Michele Stewart did not return to Cartessa after January 29, 1988. She has sought comparable employment, but has been unsuccessful because of a carryover of symptoms experienced while employed at Cartessa. At the time of trial she was engaged in odd jobs, such as cutting grass and babysitting.

21. On or about February 5, 1988 Michele Stewart and her sister-in-law, Lisa Stewart, met with Joachim Kristof to discuss her situation at Cartessa. At that meeting David Kristof was called in by his father, Joachim Kristof, who advised him that his behavior would not be tolerated and advised Michele Stewart that no further harassment would take place. Joachim Kristof, the president of Cartessa, invited Michele Stewart to return to work at Cartessa. Plaintiff declined.

## DECISION

 Sexual harassment which affects *no* tangible job benefits, but which creates a hostile, offensive or intimidating work environment, is prohibited by Title VII of the 1964 Civil Rights Act. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct.

2399, 91 L.Ed.2d 49 (1986). To prevail in an offensive work environment, sexual harassment action the plaintiff must assert and prove that: the employee was a member of a protected class; the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; the harassment complained of was based upon sex; the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and the existence of respondeat superior liability. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986).

■ It is uncontested that plaintiff, Michele Stewart, is a member of a protected class and it is clear that plaintiff was subjected to unwelcome sexual harassment by David Kristof during her employment at Cartessa. This harassment took the form of the unwanted touching of her shoulders, hands, arms, hips and, on one occasion, her breast. Stewart was also sexually harassed by Kristof's constant staring at her; by his following her around to various locations in the workplace such as the kitchen, the bathroom, and the back workroom; and by his following her to her car. This harassment was unwelcome. David Kristof was told many times by plaintiff to stop staring, following, and touching her, but he persisted. On at least one occasion when he was asked by plaintiff to stop directing his attention to her, he spent the rest of the day playing music on his tape player obviously directed at plaintiff. In addition, Kristof often grabbed plaintiff from behind to which she would voice an objection. The harassment complained of was based upon sex. While Kristof never made explicit sexual advances or requests for sexual favors, it is clear that he was attracted to plaintiff, and that the motivation for his conduct was his interest as a male in plaintiff as a female. David Kristof's conduct constituted unwelcome sexual harassment in the form of verbal and physical conduct of a sexual nature. *See McKinney v. Dole,*

765 F.2d 1129 (D.C.Cir.1985); *Hall v. Gus Construction Company, Inc.,* 842 F.2d 1010 (8th Cir.1988). Significantly, plaintiff never solicited, invited, or welcomed David Kristof's incessant intentions directed toward her. Nor did she ever say or do anything to invite this conduct. Instead, plaintiff repeatedly demanded that David Kristof desist in his intrusive and harassing behavior and that he simply leave her alone.

■ In a sexual discrimination action alleging a hostile work environment, plaintiff has the burden of proving that injury resulted not from a single or isolated offensive incident, comment, or conduct, but from incidents, comments, or conduct that occurred with some frequency. *Highlander v. K.F.C. National Management Co.,* 805 F.2d 644 (6th Cir.1986); *Rabidue, supra.* Plaintiff also has the burden of proving that the abusive working environment was severe and pervasive and the incidents were persistent, not isolated. *Miller v. Aluminum Company of America,* 679 F.Supp. 495 (W.D.Pa.1988). Plaintiff has clearly met these burdens.

■ In making the determination of whether an employer has subjected an employee to sexual harassment in an intimidating, hostile, or offensive working environment, the trier of fact must consider what a reasonable person's reaction to a similar environment would be under essentially similar circumstances and must consider such factors as the nature of the alleged harassment, the background and experience of plaintiff, her co-workers and supervisors, and the totality of the physical environment of the work area. *Rabidue, supra.* To prevail, plaintiff must successfully prove that defendant's conduct would have interfered with a reasonable individual's work performance, would have seriously affected the psychological well-being of a reasonable employee, that plaintiff's work performance was so interfered with, and that defendant's conduct seriously affected plaintiff's psychological well-being. *Id.*

Michele Stewart's work performance was unreasonably interfered with by David Kristof. While it is true that plaintiff's work product throughout her tenure at Cartessa remained quantitatively and qualitatively high, it was made evident by the unrebutted testimony of Dr. Jill Bley, a clinical psychologist, that this came at great psychological expense to plaintiff. The plaintiff had to work under extreme pressure and stress because of David Kristof's conduct. When the resulting environment became unbearable, plaintiff was forced to leave her employment. The fact that plaintiff was a diligent, intelligent and productive worker cannot be used as a defense to her claims of sexual harassment while working for defendant. Plaintiff's reaction to the conditions created by David Kristof's conduct was or should have been foreseeable by defendant and would have been the reaction of a reasonable person under similar circumstances. The sexual harassment to which plaintiff was subjected would have seriously affected the psychological well-being of a reasonable employee under similar circumstances and did in fact have a serious psychological impact on plaintiff. As a result of this sexual harassment and the offensive environment that it engendered, plaintiff suffered from severe mental, physical and emotional trauma, including loss of weight, loss of appetite, headaches, rashes, chest pains, a spastic colon, sleep disorders, depression, agoraphobia, sexual dysfunction and vomiting. These symptoms were testified to by the plaintiff's medical expert and have been unchallenged.

■ To prevail in an action that asserts sexual harassment in an offensive work environment, the burden of proof is upon the plaintiff to demonstrate respondeat superior liability by proving that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Rabidue, supra.* Cartessa, through its president, Joachim A. Kristof, knew or should have known of the sexual harassment directed toward plaintiff and failed to implement prompt and appropriate

corrective action. Plaintiff complained to Rebecca Sunderhaus, Cartessa's office manager, the daughter of the president and David Kristof's sister. Michele Stewart also complained on two occasions to Darryl Kristof, Cartessa's production manager, the son of the president and David Kristof's brother. David Kristof's offensive conduct began approximately two weeks after plaintiff started working at Cartessa. Several other employees were aware of the problems that plaintiff was having with David Kristof. Under all of these circumstances, defendant had ample notice that this sexual harassment was taking place.

It was not until after plaintiff was forced to leave her employment and subsequently had a meeting with the president, Joachim A. Kristof, that Mr. Kristof attempted to do something about the situation by speaking with his son, David. Defendant's actions were too little, too late. It should also be noted that Cartessa had no company policy prohibiting or defining sexual harassment, or any procedure for recognizing, investigating, or redressing sexual harassment claims.

■ Based upon a history of nonresponsiveness to her complaints about David Kristof's conduct, plaintiff declined to return to work after her meeting with the president, Joachim A. Kristof. The doctrine of constructive discharge applies where an employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign. *Goss v. Exxon Office Systems Co.*, 747 F.2d 885 (3d Cir. 1984). Under the conditions of plaintiff's employment, her refusal to return to work was justifiable and amounted to a constructive discharge.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action in accordance with 42 U.S.C. § 2000e *et seq.*, and all appropriate jurisdictional requirements have been met by plaintiff.

2. Plaintiff has established by a preponderance of the evidence that during her

period of employment for defendant Cartessa Corporation, between June 15, 1987 and January 29, 1988, plaintiff was subjected to sexual harassment by defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

3. Plaintiff was constructively discharged from Cartessa on January 29, 1988.

4. Plaintiff is entitled to judgment in her favor and an award of costs, expenses, and attorney's fees.

5. Plaintiff is entitled to back pay and benefits from the date of her discharge through July 31, 1989 in an amount comparable to the wages and benefits she would have received but for defendant's unlawful practices. The amount of back pay and benefits to which plaintiff is entitled is $15,927.91, an amount stipulated to by the parties in the event plaintiff prevailed on her Title VII claims.

6. Plaintiff is entitled to an award of two years front pay in lieu of reinstatement less any income earned during the two-year period from August 1, 1988.

7. Plaintiff is ordered to file a statement with the Court indicating the amount of attorney's fees and front pay to which plaintiff believes she is entitled based upon the Court's above determination. After receipt of said statement a hearing on this amount will be scheduled, if necessary. Plaintiff is to file said statement within two weeks after this decision is filed.

IT IS SO ORDERED.