In these consolidated appeals, Penton Media, Inc. (Penton) appeals from various orders entered in plaintiff Joseph Stepic's action alleging sexual harassment, retaliatory firing and other causes of action. In Case No. 77318, Penton appeals the order of the trial court which denied its motion for judgment on the sexual harassment and retaliation claims and the order which denied its motion for a new trial or remittitur of plaintiff's punitive damage and front pay compensatory damage awards. In Case No. 77737, Penton appeals the order which awarded plaintiff $72,547 for attorney fees. For the reasons set forth below, we reverse the judgment in Case No. 77318 as to the retaliation claims, reverse and remand the sexual harassment claim for further proceedings, and dismiss the arguments raised in Case No. 77737 as moot.
On July 31, 1998, following his termination from Penton, plaintiff filed this action against Penton and his former supervisor, Deborah Santora. In his fourth amended complaint, plaintiff asserted five claims for relief. For his first claim, plaintiff alleged that he was sexually harassed at Penton by co-worker Melanie Burke. Plaintiff further alleged that he complained to Penton's supervisors and human resource personnel but they failed to take sufficient remedial action. For his second claim, plaintiff alleged that Penton retaliated against him because of his complaint for sexual harassment by disciplining him more harshly than other employees and by discharging him from employment. For his third claim for relief, plaintiff asserted that Penton was liable for intentional infliction of emotional distress, and for his fourth claim, he alleged that he has a perceived disability of erratic and/or volatile personality behavior which Penton failed to accommodate. For his fifth claim, plaintiff alleged that Penton sexually discriminated against him with regard to his pay and the decision to terminate him.
Penton denied liability and moved for summary judgment. The trial court granted Penton's motion as to plaintiff's handicap discrimination claim only and the matter proceeded to a jury trial on the remaining claims on July 21, 1999.
Plaintiff's evidence demonstrated that he was hired for a housekeeping position in 1992. By 1993, he was promoted to the litho prep department where he worked as a print planner under the supervision of Santora. At all relevant times, Penton had in effect a policy prohibiting sexual harassment and one of plaintiff's witnesses admitted that the policy was posted near the employee entrance.
Penton also had in effect a progressive discipline procedure. In promulgating this policy, however, Penton noted that [c]ertain offenses may require immediate termination of employment; therefore, the Progressive Discipline Procedure does not apply in those instances.
It is undisputed that plaintiff was a productive employee who eagerly accepted additional duties, including overtime assignments. At various times from late 1993 until his termination, however, plaintiff's work evaluations indicated that he had difficulties with judgment, tact, managing anger, and reacting calmly. Plaintiff stated that he received regular raises so he did not take these remarks seriously.
In August 1996, plaintiff complained to Stephanie Boledovic of Penton's Human Resource Department that a co-worker, Melanie Burke, had been sexually harassing him. Pursuant to a memo which Boledovic prepared, plaintiff complained that Burke had been following him around in his department, stood very close to him, touched him on the shoulders, asked to join him at a Chicago Bears football game, and had made comments expressing an interest in him. Boledovic informed plaintiff that she would speak to Burke. Plaintiff repeatedly asked Boledovic not to do that and also asked whether she was concerned about a lawsuit for breaching confidentiality. Boledovic indicated that her greater concern was being sued for not addressing plaintiff's complaint. Boledovic eventually gave plaintiff the option of discussing the matter with Burke directly, explaining that plaintiff needed to specifically identify the behaviors which he wanted to cease and instructing plaintiff to return to the office the next day to report on what had happened.
It is undisputed that plaintiff did not follow Boledovic's instructions. Plaintiff testified that he simply told Burke that he wished to concentrate on his work. It is also undisputed that plaintiff returned to the Human Resource Department the following day and indicated that the situation had been taken care of and that he would return if the matter recurred.
By January 1997, plaintiff informed Santora and Boledovic that he was continuing to have problems with Burke and indicated that nothing had changed. According to a memo prepared by Penton on January 3, 1997, plaintiff admitted at this time that he never discussed the matter with Burke despite the earlier instructions from Boledovic.
Santora and Boledovic met with Burke on January 3, 1997, and informed her that she should only discuss work-related matters with plaintiff. Burke was confused and said that plaintiff was intense and moody and that she has tried to pick him up to get him out of his bad moods.
Approximately one week later, on January 10, 1997, plaintiff complained to Santora and other employees of Penton that his co-workers were not working diligently and talked extensively when the supervisors left for the day. He mentioned that he had seen Burke talking. At this time, Penton officials indicated that plaintiff should focus on his work and that they would take care of personnel matters. During the next month, plaintiff continued to have the same concerns and Penton officials explained that they would walk through the department to verify his observations.
Santora followed up on plaintiff's concerns by asking him general questions about how things were going in the department.
On July 15, 1997, plaintiff asked Kelly Gray what she would do if she were being followed at work. Gray explained that plaintiff should see Human Resources personnel. Plaintiff said that he did so a year ago and nothing ever came of it, but he was uncomfortable because Burke continued to follow him and to stare at him. He reiterated that he did not want to cause trouble and did not want to get anyone else involved at this time. Gray reported plaintiff's complaint to company officials the next day. On July 16, 1997, operations manager Phil Graham, Santora, and other managers and/or Human Resource personnel met with plaintiff. Plaintiff stated that Burke stared at him, followed him,[1] went to the in-box more frequently than other employees, and did not move out of his way if she approached him in the hall. Plaintiff stated that he did not want to work with her anymore and wanted his overtime hours changed so that he would not have to see her. Santora agreed to this request and indicated that plaintiff could work overtime at the end of his shift rather than at the beginning. This solution to the problem was memorialized in an agreement which plaintiff signed on July 17, 1997.
On August 6, 1997, Russ Herbert of the Human Resources Department and Phil Graham met with plaintiff to discuss numerous complaints of plaintiff's erratic behavior. The memo Penton prepared of the meeting indicates that employees were concerned by the volatile nature of plaintiff's comments. Penton transferred plaintiff to the third shift and required him to obtain counseling for interpersonal relationships from the employee assistance provider. Plaintiff received a shift differential increase in pay for the move. He did not protest the move or the required counseling, and later indicated that he was happy working the new shift. It is undisputed, however, that if he had to work overtime at the end of his shift, he would again be working with Burke,[2] contrary to the earlier agreement made by the parties. Further, less than three months later, plaintiff was reassigned to second shift due to personnel changes.
Plaintiff also testified that in December 1997, employee Dawn Morrow sent plaintiff an e-mail which stated, Yo Mo Fo. In response, plaintiff sent an e-mail which stated that she was talking niggerish. The e-mail was somehow sent to Santora who told plaintiff that she never wanted to see that kind of message again. Plaintiff indicated that it would not happen again.
In late February 1998, plaintiff was assigned to train Jessica McKenna. It is undisputed that during the training plaintiff told McKenna, I want you to be the best fucking worker in this place. Later, he said, That's what I want to see, Bitch. McKenna cried following this comment and plaintiff mocked her, asking, So, are you going to cry again. After McKenna reported the matter, plaintiff denied what he had said but later admitted it, stating that profanity is commonly used throughout Penton. Testimony from plaintiff's former co-workers indicated that some workers used profanity.
Plaintiff was suspended pending an investigation. Penton notified him that he had used intimidating and foul language with co-workers and that its employees had the right to work in a professional atmosphere free from harassment. Plaintiff was subsequently terminated. Penton indicated that its efforts to assist plaintiff in improving his interpersonal relationships were to no avail.
Plaintiff testified that he was depressed following his termination and considered suicide. He admitted that he made comments regarding blowing up the building and hiring a black girl to beat up employees. Plaintiff also testified that he has epilepsy and that he suffered a grand mal seizure while he was unemployed.
Plaintiff testified that because he has epilepsy, he does not drive, and this restricted his search for a new job to approximately a two and one-half mile area. Plaintiff accepted a janitorial position with Baldwin-Wallace College in October 1998. He intends to take advantage of the educational benefits offered at this position before searching for a new position.
Penton moved for a directed verdict following the presentation of plaintiff's case. The trial court denied this motion and Penton presented evidence that certain offenses, including verbal abuse may be punished without regard to the progressive discipline policy. It considered plaintiff's remarks to McKenna to constitute verbal abuse. Penton also demonstrated that it required plaintiff to receive counseling in August 1997, after Dawn Morrow complained that plaintiff was referring to women as bitches.
The jury subsequently returned a verdict in favor of plaintiff on the sexual harassment and retaliation claims only.[3] In special interrogatories, the jury determined that a reasonable person would have found the environment to be hostile or abusive, and that defendants failed to take prompt and appropriate corrective action to remedy the harassment. The jury awarded plaintiff $227,500 for front pay, $199,500 for compensatory damages, and $427,500 in punitive damages against Penton. The jury also awarded plaintiff $500 for front pay, $500 for compensatory damages, and $500 for punitive damages against Santora. Penton moved for judgment notwithstanding the verdict, and also moved for a new trial or, in the alternative, remittitur of the verdict. These motions were denied by the trial court. Plaintiff was also awarded $72,547 for attorney fees and $1,217.60 for costs. Penton assigns four errors for our review.[4]
Penton's first assignment of error states:
 THE TRIAL COURT SHOULD HAVE REJECTED MR. STEPIC'S SEXUAL HARASSMENT AND RETALIATION CLAIMS AS A MATTER OF LAW.
 A. Standard of Review
With regard to procedure, we note that Civ.R. 50(A)(4) states:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285, the Supreme Court set forth the standard for deciding a motion for a directed verdict as follows:
 "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320
[27 O.O.2d 241, 199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]." In ruling upon a motion for judgment notwithstanding the
verdict or alternative motion for a new trial, the trial court applies the same standard as required in order to rule upon a motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1988), 81 Ohio St.3d 677, 679.
 B. Sexual Harassment
Within this assignment of error, Penton asserts that it was entitled to judgment as a matter of law on plaintiff's claim for sexual harassment because the incidents which form the basis for this claim were neither severe nor pervasive and because Penton reasonably responded to plaintiff's complaints.[5]
In opposition, plaintiff contends that he was subjected to severe and pervasive harassment. He also contends that even if he did not truthfully inform Penton that the problem was continuing, Penton did not adhere to the requirements of its disciplinary policy, did not monitor Burke or otherwise investigate, and did not review its sexual harassment policy within the department. In addition, he notes that following his complaints, Penton continued to overlap his and Burke's work shifts. He also contends that Penton's follow-up was not specific enough to elicit true information about whether the problem had ceased.[6]
R.C. 4112.02(A) prohibits an employer from engaging in sexual discrimination against an employee. This includes subjecting the employee to sexual harassment. Peterson v. Buckeye Steel Casings (1999),133 Ohio App.3d 715, 723.
Case law interpreting and applying Title VII of the Civil Rights Act of 1964, Section 701 et seq., as amended, Section 2000 et seq., Title 42, U.S. Code ("Title VII"), is generally applicable to cases involving R.C. Chapter 4112.[7] Ohio Civil Rights Comm'n. v. Ingram (1994),69 Ohio St.3d 89, 93;Peterson v. Buckeye Steel Casings, supra. For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor Sav. Bank FSB v. Vinson (1986),477 U.S. 57, 67, 106 S.Ct. 2399, 2405-2406, 91 L.Ed.2d 49. That is, the nature of harassment
 "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."
Bell v. Cuyahoga Community College (1998), 129 Ohio App.3d 461, 467, citing to Faragher v. Boca Raton (1998), 524 U.S. 775, ___,118 S.Ct. 2275, 2283, 141 L.Ed.2d 662, 676.
Further, it is well-settled that an employer may be liable where an employee is sexually harassed by a co-worker and the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. Peterson v. Buckeye Casings, supra, 133 Ohio App.3d at 724.
However, if the plaintiff unreasonably failed to avail himself of the employer's preventive or remedial apparatus, he should not recover damages that could have been avoided if he had done so. Peterson v. Buckeye Casings, supra; Faragher v. City of Boca Raton, supra, 118 U.S. at 2292.
Applying the foregoing to plaintiff's claim requires us to sequentially consider plaintiff's various reports of harassment. With regard to the first report, the evidence demonstrated that in August 1996, plaintiff indicated that he was being subjected to harassment. His complaints were that Burke followed him, stared at him, had touched him on the shoulders, asked to accompany him to a football game, and had made comments expressing an interest in him. At this time, however, plaintiff repeatedly implored Penton not to discuss the matter with Burke, and there is evidence that he made a reference to an action for breaching confidentiality. It is also undisputed that plaintiff did not follow Boledovic's instructions for handling the matter and he also informed the Human Resource Department that the matter had been resolved. Plaintiff reported the matter again in January 1997, stating that nothing had changed, and explaining that Burke was following him, staring at him and did not move out of his way. At this time, Penton officials informed Burke that she should only discuss work-related matters with plaintiff. In July 1997, plaintiff reported that Burke stared at him, followed him, went to the in-box too frequently and did not move out of his way in the hall. In response, defendants permitted plaintiff to work overtime at the end of his shift to avoid Burke. Shortly thereafter, Penton transferred plaintiff to third shift and made no specific provision regarding the scheduling of plaintiff's overtime to avoid Burke.
From the foregoing, we conclude that plaintiff is prohibited from recovering for sexual harassment in connection with his first complaint in August 1996. That is, as a matter of law, plaintiff unreasonably failed to avail himself of the employer's remedial apparatus, then lied about handling the matter himself.
With regard to the subsequent complaints, however, we think that the trial court correctly denied the motion for a directed verdict because there is competent evidence upon which evidence reasonable minds might reach different conclusions as to whether Penton was liable for the sexual harassment of plaintiff by a co-worker. Although Penton claims that the harassment was neither severe nor pervasive as a matter of law, the fact remains that courts considering whether evidence similar to that presented herein constitutes actionable sexual harassment have reached contrary conclusions. Compare Stewart v. Cartessa Corp. (S.D.Ohio 1990),771 F. Supp. 876 (touching, staring and following actionable) and Mendoza v. Borden, Inc. (C.A.11 1999), 195 F.3d 1238 (touching, staring and following not actionable). Moreover, considering the totality of the circumstances as we must, see Williams v. General Motors Corp. (C.A.6 1999), 187 F.3d 555, we note that plaintiff's evidence during the time period after the August 1996 complaints was that nothing had changed, and that Burke followed him, stared at him, did not move out of his way when he approached, and went to the in-box more than other employees. The evidence also demonstrated that her comings and goings overlapped plaintiff's to a degree. In addition, plaintiff testified that the situation was making him feel uncomfortable and hampered his work performance. Plaintiff's father testified that plaintiff was upset and his mother testified that he was nervous and angry. From the foregoing, we are unable to conclude that the trial court erred in submitting to the jury the issue of whether actionable sexual harassment occurred within this time period.
As to Penton's response to this matter, plaintiff insists that Penton's actions were not reasonably calculated to end the harassment as a matter of law because it did not investigate the matter. We reject this contention because the undisputed evidence demonstrates that Penton proceeded at all times with the assumption that the allegations were true and Penton officials admonished Burke to keep her dealings with plaintiff on a professional basis. Nonetheless, from the evidence presented by plaintiff, we believe that a reasonable juror could have concluded that Penton's actions were not reasonable since defendants, in their admonition to Burke, did not specifically address with her the issue of following plaintiff.
Our determination that only a portion of plaintiff's evidence was correctly submitted to the jury, in addition to our determination, infra, that plaintiff failed to provide sufficient proof of his retaliation claim, compel us to order a retrial of the sexual harassment claim. That is, the trial court should have withheld all evidence submitted in connection with plaintiff's August 1996 claim of harassment from the jury as a matter of law. In addition, because we have determined that the termination was not a retaliatory discharge as a matter of law and because extensive evidence was offered in this matter concerning plaintiff's post-termination damages, including the numerous references to the fact that plaintiff has epilepsy and suffered a grand mal seizure during the time he was unemployed, we are convinced that defendants were deprived of a fair and correct assessment of the damages sustained herein. As the Supreme Court noted in Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 185, the two-issue rule[8]
pursuant to which a general verdict may sometimes be preserved, "does not apply where there is a charge on an issue upon which there should have been no charge" and where prejudice has resulted therefrom. Id., quoting Ricks v. Jackson (1959), 169 Ohio St. 254. We therefore reverse and remand the sexual harassment claim for further proceedings.
The judgment on the sexual harassment claim is reversed and remanded for further proceedings in accordance with this opinion.
 B. Retaliation
Penton further asserts that it is entitled to judgment as a matter of law on plaintiff's claim for retaliation because plaintiff failed to present any evidence that he was terminated for retaliatory motives. Penton further notes that plaintiff was terminated nineteen months after first complaining of sexual harassment and seven months after his last complaint. Further according to Penton, the record clearly demonstrates that plaintiff was terminated for sending a racist e-mail message and for speaking to a trainee in an offensive manner and referring to her as Bitch.[9]
In opposition, plaintiff asserts that his work performance was good before he complained about Burke, and that he was terminated and not afforded the progressive discipline generally imposed. He further asserts that profanity was common and he insists that it was simply a pretext for Penton to terminate him for directing profanity at a trainee since many employees often used profanity.[10]
Pursuant to R.C. 4112.02(I), it is unlawful to retaliate against an employee who has opposed any unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under R.C. 4112.01 through 4112.07. See, also, 42 U.S.C. § 2000e-3(a), ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice. . . .").
In determining whether the trial court correctly denied defendants' motions for a directed verdict and judgment notwithstanding the verdict on plaintiff's claim for retaliation, we employ the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green (1973),411 U.S. 792. See Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div. (1994), 99 Ohio App.3d 396, 402. First, plaintiff must establish a prima facie case of retaliation by showing that:
(1) he engaged in a protected activity;
 (2) this exercise of protected rights was known to the defendants;
 (3) defendants thereafter took adverse employment action against the plaintiff; and
 (4) there was a casual connection between the protected activity and the adverse employment action.
Id. Once plaintiff establishes a prima facie case, the burden shifts to the defendants who must articulate a non-discriminatory basis for their action. Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div., supra. Next, plaintiff must prove by a preponderanceof the evidence that the articulated business reason was a pretext for discrimination. Id.; see, also, Texas Department of Community Affairs v. Burdine (1981),450 U.S. 248, 256; Manzer v. Diamond Shamrock Chems. Co. (6th Cir. 1994), 29 F.3d 1078, 1083 ("plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation").
In this instance, defendants clearly articulated a non-discriminatory basis for the terminating plaintiff, i.e., the e-mail and plaintiff's remark to the trainee. It was then incumbent upon plaintiff to produce sufficient evidence from which the jury may reasonably reject the employer's explanation. Although plaintiff presented evidence that profanity was used at Penton, we wholly reject plaintiff's attempts to equate his remark to simple profanity; the remark was a profane term directed at another and was therefore abusive. Moreover, plaintiff presented no evidence that complaints of verbal abuse were punished in a more lenient fashion and plaintiff wholly failed to prove that the articulated reason was merely a pretext for discrimination.
The assigned error is well-taken with regard to the retaliation claim. This portion of the judgment is hereby reversed.
Penton's second assignment of error states:
 THE TRIAL COURT ERRED IN DENYING PENTON'S MOTION FOR A NEW TRIAL OR REMITTITUR OF MR. STEPIC'S PUNITIVE DAMAGE AWARD BECAUSE IT IS CONTRARY TO LAW AND PATENTLY EXCESSIVE.
Penton next complains that the punitive damage award is erroneous because there was no evidence that Penton acted with malice and the award is the result of passion or prejudice. Penton specifically complains that plaintiff's counsel cried during opening statements and closing arguments to the jury. In opposition, plaintiff maintains that punitive damages are correct since Penton acted with reckless indifference in this matter.
R.C. 4112.99 authorizes an award of punitive damages in civil employment discriminationactions upon evidence of actual malice in civil actions brought pursuant to the statute. Rice v. CertainTweed Corp. (1999), 84 Ohio St.3d 417, 422. The syllabus of Preston v. Murty (1987),32 Ohio St.3d 334, defines actual malice as:
 "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.)
In this case, we have reversed the sexual harassment portion of the judgment and remanded it for further proceedings. The question of whether the defendants acted with ill will or a spirit of revenge, or with a conscious disregard for plaintiff's rights and safety that has a great probability of causing substantial harm is now moot. Punitive damages, if any, must be determined following our remand of the sexual harassment claim herein.
The second assignment of error is moot.
Penton's third assignment of error states:
 THE TRIAL COURT ERRED IN DENYING PENTON'S MOTION FOR A NEW TRIAL OR REMITTITUR OF MR. STEPIC'S EXCESSIVE AND UNPRECEDENTED 15 YEAR FRONT PAY AWARD.
Herein, Penton contends that the front pay award is erroneous since plaintiff failed to mitigate his damages, and since it is unsupported by the evidence.[11] In opposition, plaintiff contends that mitigation is an affirmative defense which must be proven by the defendant, not the plaintiff, and that defendant failed to establish this defense herein. He also notes that there is no per se rule which cuts off damages for a plaintiff who elects to return to school and that equitable considerations govern.[12]
Herein, we have determined that plaintiff failed to prove that he was terminated in retaliation for asserting a sexual harassment complaint. We have further determined that the introduction of evidence concerning plaintiff's post-termination damages has deprived defendants of a fair assessment of the damages sustained by plaintiff on his sexual harassment claim. Accordingly, the front pay damage award cannot stand and is now moot.
Penton's fourth assignment of error states:
 THE TRIAL COURT ERRED IN PERMITTING MR. STEPIC'S REQUEST FOR ATTORNEY FEES TO GO TO THE JURY AND IN AWARDING MR. STEPIC OVER $70,000 IN FEES.
Building upon its previous assertion that the punitive damage award was erroneous, Penton argues that attorney fees are likewise improper. Alternatively, Penton asserts that the fees must be reduced in light of the unsuccessful claims which were litigated below. Plaintiff insists, however, that the fee is correct because therefore encompass all hours expended under Hensly v. Eckerhart (1983), 461 U.S. 424.
R.C. 4112.99 does not, on its face, contain provisions entitling the prevailing party to an award of attorney fees. Sutherland v. Nationwide Gen. Ins. Co. (1995), 102 Ohio App.3d 297, 299. Attorney fees may therefore be awarded only where punitive damages have been found. Id.; Griffin v. Lamberjack (1994), 96 Ohio App.3d 257, 266.
In this instance, we have determined that punitive damages, if any, must be determined following our remand of the sexual harassment claim herein. Likewise, the issue of whether attorney fees are warranted must be determined upon remand.
The fourth assignment of error is moot.
The judgment of the trial court is reversed and remanded for further proceedings as to the sexual harassment claim and the damages resulting therefrom. The judgment of the trial court is reversed as to the retaliation claim.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant and appellee's split their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., CONCURS JOHN T. PATTON, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED CONCURRING DISSENTING OPINION)
[1] Time records also reveal that on sixty-nine occasions, Burke punched in or out within a few minutes of plaintiff.
[2] At all relevant times, Burke worked during the first shift.
[3] The trial court dismissed the claim of intentional infliction of emotional distress at the close of plaintiff's case.
[4] Plaintiff filed a cross-appeal in Case No. 77318 but he has not briefed any errors for our review herein.
[5] Ohio Chamber of Commerce, (Chamber of Commerce) as amicus curiae herein, similarly urges that Penton's actions be determined to be a good faith remedial action and therefore not actionable since plaintiff did not want Burke to be confronted and upon Penton's repeated follow-up inquiries indicated that the situation was fine.
[6] Amici curiae Ohio Employment Lawyers Association, Ohio Academy of Trial Lawyers, and the Committee Against Sexual Harassment (collectively referred to as the Committee) asserts that the matter must be affirmed because this Court must accept the factual findings elicited below.
[7] Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is well-settled that sexual harassment constitutes sexual discrimination under Title VII, see Williams v. Saxbe (D.D.C. 1976),413 F. Supp. 654.
[8] This rule is generally stated as follows: "where there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded." See Hampel v. Food Ingredients Specialties, Inc., supra, quoting H.E.Culbertson Co. v. Warden (1931), 123 Ohio St. 297, 303.
[9] In this connection, amicus curiae Chamber of Commerce urges reversal and asks this Court to consider whether employees who admittedly engage in misconduct but have previously filed complaints of sexual harassment may become effectively insulated from the employer's disciplinary actions as such disciplinary action may then be used as evidence of retaliation.
[10] The Committee again urges deference to the jury's findings. They maintain that the essential elements of the cause of action are supported by competent credible evidence. They claim that swearing in general and swearing at someone are comparable and it is simply a pretext to punish plaintiff for swearing at a trainee since the general use of profanity is not sanctioned.
[11] Amicus curiae Chamber of Commerce notes that Ohio courts have refused front pay as a matter of right for long term excellent court relief has been obtained and the fee may compensation * * *.
[12] Amici curiae Committee notes that front pay has been upheld for substantial periods of time where it is shown that the plaintiff cannot obtain comparable employment.